### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATIONAL A-1 ADVERTISING, INC.　　: CIVIL ACTION
　　　　　　　　　　　　　　　　　　:
　　　　　　vs.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　: NO. 11-CV-4230
JOHN DOE, a/k/a RICHARD MCCONNELL :
and ONLINE NIC, INC., and　　　　 :
PERRY NARANCIC and REX W. LIU　　 :

### MEMORANDUM AND ORDER

**JOYNER, C.J.**　　　　　　　　　　　　　　　　**November   22, 2011**

We write now to address the issue which we previously raised *sua sponte* in our Order dated September 28, 2011: whether or not this Court possesses the requisite subject matter jurisdiction to proceed further.  In compliance with that Order, the parties have now provided the supplemental briefing requested and because we cannot find to a legal certainty that the amount in controversy exceeds the sum or value of $75,000, we shall remand this matter to the Court of Common Pleas of Philadelphia County, where it was originally filed.

### Background

This case has its genesis in the sale of an internet domain, www.walk.com to Plaintiff, National A-1 Advertising, Inc. ("A-1").  Plaintiff avers that in April 2011, it was contacted by an individual representing himself to be one Richard McConnell, the owner of the domain at issue, with an offer to sell the domain to

A-1 for $35,000.   (Complaint, ¶s 9-10).   A-1 accepted the offer

and, on April 13, 2011 wire transferred the total sum of

$35,311.50[1] to Escrow.com, a company in the business of acting as

escrow agent for business transactions.   (Complaint, ¶s 12-14).

The parties' agreement provided that, upon receipt of

confirmation from Escrow.com that Plaintiff had deposited the

monies for the sale, the domain would be transferred by its

administrator, internet registrar, MelbourneIT in Australia.   A-1

had established its own account with MelbourneIT, presumably to

facilitate the transfer, and on April 19, 2011, the domain was

transferred to A-1's account with Melbourne.   (Complaint, ¶s 14-

16).   The following day, having been notified that the transfer

had taken place, Plaintiff authorized the release of the $35,000

to McConnell.   Escrow.com then wire-transferred that amount to

the account of Defendant OnlineNIC at Wells Fargo Bank.

(Complaint, ¶17).

Two days later, on April 22, 2011, Plaintiff was contacted

by Richard McConnell, the owner of the walk.com domain.   Mr.

McConnell explained that the domain had been hijacked from his

Godaddy.com account on Friday, April 8, 2011 and he had spent the

better part of nearly three weeks trying to recover it.

(Complaint, ¶ 18).   Insofar as no one at either Godaddy.com or

---

[1]   Although not specifically designated as such, presumably the
additional $311.50 are the fees charged by Escrow.com for its services.   (See,
Complaint, ¶13).

MelbourneIT had ever posted any warnings or placed any holds on

the accounts to prevent further fraud, Plaintiff had no idea that

the domain which it believed it had purchased legally had been

stolen.  Shortly after hearing from the real Richard McConnell,

A-1 notified Escrow.com, Wells Fargo Bank, the FBI and IC3 in an

attempt to recover the purchase price which it had paid to the

defendant who it alleges stole the domain and who is identified

in this Complaint as John Doe.  (Complaint, ¶s 19-20).  Those

efforts proved unsuccessful and Plaintiff commenced suit and

filed a Motion for Preliminary Injunction in the Court of Common

Pleas of Philadelphia County on April 26, 2011.[2]

Subsequent to the filing of the complaint, Defendants

removed the case to this Court pursuant to 28 U.S.C. §1441(a) on

the grounds that "...this Court would have original jurisdiction

pursuant to 28 U.S.C. §1332(a) in that complete diversity of

citizenship exists, as Plaintiff is a Delaware corporation with a

principal place of business located in Philadelphia,

Pennsylvania, OnlineNIC is a California corporation, and

Defendants Doe (a/k/a McConnell), Narancic and Liu are

---

[2]  Initially, Plaintiff brought suit in the Court of Common Pleas of
Philadelphia County by filing a Praecipe for Writ of Summons against John Doe,
a/k/a Richard McConnell only.  Following the grant of the Motion for
Preliminary Injunction on April 26, 2011 and the issuance of an Order by the
Court of Common Pleas prohibiting Wells Fargo Bank from allowing any
withdrawals from OnlineNIC, Inc.'s account into which Escrow.com had wire-
transferred Plaintiff's money, OnlineNIC requested and was granted leave to
intervene as a defendant.  Thereafter, subsequent to OnlineNIC's issuance of a
Rule to File Complaint to Plaintiff, Plaintiff filed its complaint in the
Philadelphia Court against not only Doe and OnlineNIC, but also against Perry
Narancic and Rex Liu as the "partner" and "manager" of OnlineNIC.

domiciliaries of California, and the matter in controversy exceeds $75,000.00." (Notice of Removal, ¶ 9). In footnote 1 to the Notice of Removal, Defendants further asserted that "[i]n addition to amounts sought by Plaintiff, which Defendant OnlineNIC specifically disputes, Defendant OnlineNIC will be pursuing a counterclaim, in which damages well in excess of $75,000.00 will be sought." Defendants then filed motions to dismiss pursuant to Fed. R. Civ. P. Nos. 9(b) and 12(b)(6) and to transfer venue pursuant to 28 U.S.C. §1404(a). As Fed. R. Civ. P. 12(h)(3) dictates that "[i]f [a] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," we resolved to ascertain the value of the claims at issue and the amount in controversy in order to ensure that we had jurisdiction to proceed further.

### **Discussion**

As noted, the statute conferring jurisdiction upon the district courts in cases based upon the diverse citizenship of the parties is 28 U.S.C. §1332(a), which reads as follows in relevant part:

> **(a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between -
>
> > **(1)** citizens of different States;
> >
> > **(2)** citizens of a State and citizens or subjects of a foreign state;

4

**(3)** citizens of different States and in which citizens
or subjects of a foreign state are additional parties;
and

**(4)** a foreign state, defined in section 1603(a) of this
title, as plaintiff and citizens of a State or of
different States.

...

Indeed, federal courts are not courts of general

jurisdiction; they have only the power that is authorized by

Article III of the Constitution and the statutes enacted by

Congress pursuant thereto.   Bender v. Williamsport Area School

District, 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed.2d

501 (1986).   For this reason, it is incumbent upon every federal

court to satisfy itself of its own jurisdiction.   Id. (citing

Mitchell v. Maurer, 293 U.S. 237, 244, 55 S. Ct. 162, 165, 79 L.

Ed.2d 338 (1934)).   The existence of federal jurisdiction

ordinarily depends on the facts as they exist when the complaint

is filed.   Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826,

830, 109 S. Ct. 2218, 2222, 104 L. Ed.2d 893 (1989).

The process and propriety for removal of cases from state to

federal courts is laid out in 28 U.S.C. §1441.   Subsection (a) of

that statute provides the general rule:

**(a)** Except as otherwise expressly provided by Act of
Congress, any civil action brought in a State court of which
the district courts of the United States have original
jurisdiction, may be removed by the defendant or the
defendants, to the district court of the United States for
the district and division embracing the place where such
action is pending.   For purposes of removal under this
chapter, the citizenship of defendants sued under fictitious

names shall be disregarded.

Thus, by statute, a defendant has the right to remove a civil action from state court if the case could have been brought originally in federal court and, for a removal predicated upon diversity of citizenship, a proper exercise of federal jurisdiction requires satisfaction of the amount in controversy requirement as well as complete diversity between the parties. In re Briscoe, 448 F.3d 201, 215 (3d Cir. 2006).  Courts "discern the amount in controversy by consulting the face of the complaint and accepting the plaintiff's good faith allegations.  Dolin v. Asian American Accessories, Inc., No. 10-4054, 2011 U.S. App. LEXIS 21990, at *4 (3d Cir. Oct. 28, 2011)(citing Horton v. Liberty Mutual Ins. Co., 367 U.S. 348, 353, 81 S. Ct. 1570, 6 L. Ed.2d 890 (1961) and Frederico, 507 F.3d at 194).  Through it all, however, "estimations of the amounts recoverable must be realistic" and "the inquiry should be objective and not based on fanciful, pie-in-the-sky, or simply wishful amounts, because otherwise the policy to limit diversity jurisdiction will be frustrated."  Id.(quoting Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 403 (3d Cir. 2004)).

Removal statutes should be strictly construed "against removal and all doubts should be resolved in favor of remand." Gibboni v. Hyatt Corp., Civ. A. No. 10-2629, 2011 U.S. Dist. LEXIS 29662 at *4 (E.D. Pa. March 22, 2011)(quoting Batoff v.

State Farm Insurance Co., 977 F.2d 848, 851 (3d Cir. 1992) and

Steel Valley Authority v. Union Switch & Signal Div., 809 F.2d

1006, 1010 (3d Cir. 1987)).  The removing party carries a heavy

burden of showing that at all stages of the litigation the case

is properly before the federal court.  Brown v. JEVIC, 575 F.3d

322, 326 (3d Cir. 2009).  This burden varies depending upon

whether the relevant facts of the case are in dispute or findings

have been made: when the relevant facts are not in dispute or

findings have been made, the proponent of federal jurisdiction

must show by a legal certainty that the amount in controversy

exceeds the statutory minimum.  Kalick v. Northwest Airlines

Corp., 372 Fed. Appx. 317, 321 (3d Cir. March 29, 2011); Samuel-

Bassett, 357 F.3d at 398.  Where facts are in dispute, the

plaintiff must show the same by a preponderance of the evidence.

Id.,(citing Frederico v. Home Depot, 507 F.3d 188, 194 (3d Cir.

2007)).

     Beginning with a reading of the state court complaint, we see

that Plaintiff is asserting five claims – for fraud, conversion,

breach of contract, civil conspiracy and seeking imposition of a

constructive trust, all of which arise out of the hijacking and

subsequent sale to Plaintiff of the www.walk.com domain for the

sum of $35,000.  While Defendants undoubtedly dispute their

involvement in the alleged scheme, nowhere in their filings do

they contest the basic underlying alleged facts - that Plaintiff

was approached by an individual identified in the complaint as

Defendant Doe masquerading as the real Richard McConnell; that

this individual offered to sell the domain to the plaintiff for

the sum averred; that the domain was hijacked from the real

McConnell's godaddy.com account; or that pursuant to an agreement

reached with Doe, Plaintiff wire transferred $35,311.50 to

Escrow.com, which in turn released $35,000 the following day to

the account of Defendant OnlineNIC at Wells Fargo Bank.  Thus, we

find that the legal certainty test is properly utilized here.

In the *ad damnum* clauses to Counts I (Fraud), II

(Conversion) and IV (Civil Conspiracy) Plaintiff seeks to recover

compensatory damages, punitive damages, attorney's fees, costs,

interest "and such other and further relief as this court deems

just."  In Count III, alleging Breach of Contract, Plaintiff asks

that judgment be entered in its favor "for all damages suffered,

as a result of Doe's breach, against Doe together with an award

of attorney's fees, costs, interest and such other and further

relief as this Court deems just."  Finally, in Count V

(Equity/Constructive Trust), "Plaintiff prays that [the] Court

impose a trust upon the sums of money in its possession and

deliver those funds to National, together with such other and

further relief as this Court deems just."  These damages demands

are in keeping with Pennsylvania law which holds that while

punitive damages may not be recovered in breach of contract

actions, they may be awarded for fraud, civil conspiracy and conversion.  Bankers Trust Co. v. Dukes, Civ. A. No. 97-1417, 1997 U.S. Dist. LEXIS 18452 at * (E.D. Pa. Nov. 21, 1997); Rainbow Trucking, Inc. v. Ennia Insurance Co., 500 F. Supp. 96, 99 (E.D. Pa. 1980).

Again, the threshold amount being sought in this matter is the $35,000 purchase price for the www.walk.com domain, plus the $311.50 in services charges paid to escrow.com.  This is, of course, the basis for the compensatory damages demands.  While there are additional expenses and costs attendant to the filing and maintaining of this action, under Section 1332(a), these do not weigh in the computation of the minimum amount in controversy, nor do we consider the amount of any setoffs or counterclaims to which the defendant may be entitled.  See, 28 U.S.C. §1332(b).  Plaintiff also appears to be seeking to recover its attorneys' fees.

The question thus becomes how high are these attorneys' fees and what, if any, punitive damages, can Plaintiff reasonably expect to recover.  Under Pennsylvania law, punitive damages are an "extreme remedy" available in only the most exceptional matters.  Phillips v. Cricket Lighters, 584 Pa. 179, 188, 883 A.2d 439, 445 (2005).  Punitive damages may be appropriately awarded only when the plaintiff has established that the defendant has acted in an outrageous fashion due to either "the

defendant's evil motive or his reckless indifference to the rights of others." Id. "While States possess discretion over the imposition of punitive damages, it is well established that there are procedural and substantive constitutional limitations on these awards." State Farm Mutual Automobile Insurance Co. v. Campbell, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519, 155 L. Ed.2d 585 (2003). "Courts must ensure that the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered." Id, 538 U.S. at 426, 123 S. Ct. at 1524.

The parties have surprisingly little to say on this matter. For its part, Plaintiff notes only at page 6 of its Memorandum of Law in Support of Remand,

> "While punitive damages are possible and reasonable, given
> the conduct averred, there is no assurance of an award, and
> certainly no assurance that an award of punitive damages
> will exceed the jurisdictional minimum.  Therefore,
> jurisdiction should be relinquished and the case remanded to
> the Court of Common Pleas of Philadelphia County."

Defendants' remarks are similarly sparse:

> "Should Plaintiff demonstrate evidence of 'malice,
> vindictiveness and wanton disregard,' which of course,
> Defendant disputes, Plaintiff would be able to recover
> punitive damages under Pennsylvania law...(citation
> omitted).  In such an event, Plaintiff's damages could
> easily exceed the $75,000 jurisdictional requirement.

Moreover, in support of their jurisdictional burden, Defendants rely exclusively on the Plaintiff's agreement to allow Defendants to place $75,000 into escrow with the Court of Common Pleas as a

pre-condition for lifting the "hold" on OnlineNIC's Wells Fargo account.   That amount remains in escrow pending the resolution of this suit.   Defendants assert that this action is clear evidence that "at a minimum, Plaintiff believes its damages to be $75,000 or more." (Defendants' Memorandum of Law Pursuant to Court Order of Sept. 30, 2011, at p. 4).

While this is certainly a reasonable interpretation, it is not the only possible inference that can be drawn. Indeed, Plaintiff counters that, in fact, the "$75,000 escrow is *below* the jurisdictional limit since 28 U.S.C. §1332(a) requires that the matter in controversy must <u>exceed</u> $75,000, exclusive of interest and costs, to vest jurisdiction." (Plaintiff's Memorandum of Law in Support of Remand, at p. 5).  We find that it is equally reasonable to interpret the placement of this amount into escrow as evincing a belief on Plaintiff's part that this amount should be sufficient to cover any judgment which it should receive in its favor.  Inasmuch as there exists no other evidence as to the value of this case, we cannot find that the defendant, as the proponent of jurisdiction, has shown *either* to a legal certainty *or* by a preponderance of the evidence that the amount in controversy exceeds the minimum threshold set by §1332(a).  We must, therefore, decline to exercise jurisdiction and remand this matter to the Court of Common Pleas of Philadelphia County.

An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
NATIONAL A-1 ADVERTISING, INC.    : CIVIL ACTION
                                  :
          vs.                     :
                                  : NO. 11-CV-4230
JOHN DOE, a/k/a RICHARD MCCONNELL :
and ONLINE NIC, INC., and         :
PERRY NARANCIC and REX W. LIU     :
```

**ORDER**

AND NOW, this  22nd  day of November, 2011, following careful consideration of the parties' supplemental briefing provided in response to this Court's Order of September 28, 2011 and it appearing to the Court that subject matter jurisdiction is lacking, it is hereby ORDERED that this Case is REMANDED to the Court of Common Pleas of Philadelphia County.

                                    BY THE COURT:


                                    /s/ J. Curtis Joyner
                                    _____
                                    J. CURTIS JOYNER,      C.J.